# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Insulation by Cohen's, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Lonnie G. Becude, Jr., <br><br> Defendant. | Civil Action No. 2:25-cv-01624-RMG <br><br> **COMPLAINT** |

Plaintiff Insulation by Cohen's, LLC ("**Cohen's**" or "**Plaintiff**"), by and through their undersigned counsel, respectfully show unto this Honorable Court as follows:

## PARTIES AND JURISDICTION

1. Cohen's is a limited liability company organized and existing under the laws of the State of South Carolina.

2. Plaintiff's sole member is David Gaskins Sr., a citizen and resident of the State of South Carolina. Accordingly, Cohen's is a citizen of the State of South Carolina for jurisdictional purposes.

3. Defendant Lonnie G. Becude, Jr. ("**Defendant**") is a citizen and resident of the State of North Carolina.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

5. Specifically, this Court has jurisdiction over the parties and subject matter hereto in that the allegations involve Defendant's breach of restrictive covenants and there is complete diversity of citizenship in this matter where the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the

1

events or omissions giving rise to the allegations herein occurred in the Charleston Division of the District of South Carolina as well as pursuant to the forum selection clause found in the agreements set forth more fully herein.[1]

## FACTUAL BACKGROUND

### *The Asset Purchase Agreement*

7. For over forty years, Cohen's has been and continues to be in the business of providing insulation services to new home builders, commercial contractors, and homeowners.

8. Cohen's originally began its operations in and around Charleston, South Carolina, but it has expanded services across the Carolinas and Georgia and other states.

9. Cohen's is now one of the largest independently-owned family insulation companies in the nation.

10. Prior to December 6, 2023, Cohen's had office locations and serviced its customers in the following cities and surrounding areas:

    i. Augusta, Georgia;

    ii. Charleston, South Carolina;

    iii. Columbia, South Carolina;

    iv. Florence, South Carolina;

    v. Greensboro, North Carolina;

    vi. Greenville, South Carolina;

---

[1] Pursuant to the Asset Purchase Agreement, defined herein, Cohen's and Defendant "irrevocably submit[ted] to the jurisdiction of the state or federal courts of the State of South Carolina, County of Berkeley in any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agree that all claims in respect of such action or proceeding shall be heard and determined in the state or federal courts of the State of South Carolina, County of Berkeley or Charleston." (Exhibit 1, Asset Purchase Agreement § 8.10.)

      vii.     Myrtle Beach, South Carolina;

     viii.    Otto, North Carolina;

      ix.     Outer Banks, North Carolina;

       x.     Salisbury, North Carolina;

      xi.     Savannah, Georgia;

     xii.     Statesboro, Georgia; and

    xiii.     Wilmington, North Carolina.

11. Cohen's did not own an office location in Asheville, North Carolina prior to December 6, 2023, but it desired to expand its operations into Asheville, North Carolina.

12. Indeed, Cohen's desired to expand its operations not only into Asheville, North Carolina, but after December 6, 2023, it expanded to the following locations as well: (1) Raleigh, North Carolina; (2) Fort Mill, South Carolina; (3) Morehead City, North Carolina; (4) Richmond, Virginia; and (5) Altoona, Pennsylvania.

13. Prior to December 6, 2023, Defendant owned two insulation businesses in Asheville, North Carolina, called (1) Sprayfoam Asheville WNC LLC and (2) Energy Smith US LLC.

14. The principal office address for Sprayfoam Asheville WNC LLC was 12 Glenn Willow Drive, Suite 63, Arden, North Carolina 28704-0999.

15. Upon information and belief, Defendant has approximately twenty years' experience or more in the insulation industry.

16. On December 6, 2023, Cohen's and Defendant executed an asset purchase agreement ("**Asset Purchase Agreement**") for the sale of Defendant's two insulation businesses to Cohen's, which is attached hereto as **Exhibit 1**.

17. Given Defendant's background, knowledge, and experience, he is a sophisticated party relative to the Asset Purchase Agreement.

18. Cohen's agreed to pay four hundred thousand dollars ($400,000.00) for the sale of Defendant's two insulation businesses. (Exhibit 1, Asset Purchase Agreement § 2.05.)

19. In order to ensure Defendant would not use his knowledge and experience to engage in competition with the two insulation businesses being purchased by Cohen's, the Asset Purchase Agreement contains a non-competition agreement.

20. The non-competition agreement is as follows:

> **Section 6.02  Non-competition; Non-solicitation.**
>
> (a)     For a period of five (5) years commencing on the Closing Date ("**Restricted Period**"), Seller shall not and Seller Principal shall not, directly or indirectly, (i) engage in or assist others in engaging in the Restricted Business in the Territory; (ii) have an interest in any Person that engages directly or indirectly in the Restricted Business in the Territory (as defined in <u>Exhibit A</u> attached hereto) in any capacity, including as a partner, shareholder, member, employee, principal, agent, trustee or consultant; or (iii) cause, induce or encourage any actual or prospective client, customer, supplier or licensor of the Business (including any existing or former client or customer of Seller and any Person that becomes a client or customer of the Business after the Closing), or any other Person who has a business relationship with the Business, to terminate or modify any such actual or prospective relationship. Notwithstanding the foregoing, Seller and Seller Principal may own, directly or indirectly, solely as an investment, securities of any Person traded on any national securities exchange if Seller and Seller Principal is not a controlling Person of, or a member of a group which controls, such Person and does not, directly or indirectly, own five percent (5%) or more of any class of securities of such Person.

(Exhibit 1, Asset Purchase Agreement § 6.02(a).)

21. The Asset Purchase Agreement defines "Business" as meaning "installing insulation in residential and commercial properties." (Exhibit 1, Asset Purchase Agreement, Recitals & § 1.01.)

22. The Asset Purchase Agreement defines "Territory" as meaning "within a 100 mile radius of any facility of [Cohen's]." (Exhibit 1, Asset Purchase Agreement, A-2.)

23. Following the execution of the Asset Purchase Agreement, Cohen's began operating out of the former office address of Sprayfoam Asheville WNC LLC, i.e. 12 Glenn Willow Drive, Suite 63, Arden, North Carolina 28704-0999.

24. Defendant expressly acknowledged that a breach of the non-competition agreement contained within the Asset Purchase Agreement "would give rise to irreparable harm to [Cohen's]," as set forth more fully below:

> (c)     Seller and Seller Principal acknowledge that a breach or threatened breach of this **Section 6.02** would give rise to irreparable harm to Buyer, for which monetary damages may not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by Seller of any such obligations, Buyer shall, in addition to any and all other rights and remedies that may be available to it in respect of such breach, be entitled to seek equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

(Exhibit 1, Asset Purchase Agreement § 6.02(c).)

25. Defendant also expressly acknowledged that the non-competition agreement contained within the Asset Purchase Agreement is "reasonable and necessary to protect the legitimate business interests of [Cohen's] and constitute[s] a material inducement to [Cohen's] to enter into [the Asset Purchase] Agreement and consummate the transactions contemplated by [the Asset Purchase] Agreement." (Exhibit 1, Asset Purchase Agreement § 6.02(d).)

26. Generally, a non-competition agreement as an adjunct to the sale of a business enables the seller to capitalize on the disposition of his goodwill and receive a higher price.

27. Of the four hundred thousand dollars ($400,000.00) purchase price, fifty thousand dollars ($50,000.00) was allocated towards the value of the non-competition agreement; one hundred and eighty-five thousand dollars ($185,000.00) was allocated to the value of physical assets of the businesses; and one hundred and sixty-five thousand dollars ($165,000.00) was

allocated to the value of the goodwill.

28.     As evidenced by the Asset Purchase Agreement's allocation of the purchase price, Defendant was able to capitalize on the disposition of his goodwill to receive a higher price for the sale of the businesses, which was enabled via the inclusion of the non-competition agreement into the Asset Purchase Agreement. (Exhibit 1, Asset Purchase Agreement, Schedule 2.06 and Closing Worksheet.)

29.     Further, as evidenced by the purchase price and allocation thereof, the non-competition agreement contained within the Asset Purchase Agreement was supported by valid consideration.

### *The Employment Agreement*

30.     One of the conditions for the Asset Purchase Agreement was the execution of an employment agreement between Cohen's and Defendant ("Employment Agreement"), which is attached hereto as **Exhibit 2**. (Exhibit 1, Asset Purchase Agreement § 3.02; Exhibit 2, Employment Agreement, Recitals and ¶ 26.)

31.     On December 6, 2023, the same day as the Asset Purchase Agreement was executed, Cohen's and Defendant executed the Employment Agreement.

32.     Defendant was hired as the Vice President of Western North Carolina and his duties were set forth as being responsible for generating and completing sales for Plaintiff's Asheville, North Carolina facility—i.e. 12 Glenn Willow Drive, Arden, North Carolina 28704-0999—and promoting Cohen's to customers.

33.     In exchange for Defendant performing his scope of duties, Cohen's agreed to pay him a salary of two thousand, five hundred and ninety-seven dollars ($2,597.00) per week along with a monthly commission of five percent (5%) for certain sales attributable to Defendant.

34.     Additionally, the Employment Agreement contains a non-competition agreement, which is as follows:

> 9. **Covenant Not to Compete.** Employee covenants and agrees that while he is an employee of the Company, and for a period of three (3) years from the date of termination of such employment, whether the termination is initiated by the Company or Employee, for any reason whatsoever, Employee shall not, within the Territory (defined herein), directly or indirectly, on his own behalf or through any person or entity, in any manner whatsoever,

> whether as an employee, consultant, agent, representative, director, officer, joint venturer, partner or sole proprietor, a) engage in or have any interest in any activity which is directly competitive with the Business of the Company; b) sell or otherwise provide insulation in competition with the Business or to any person or entity that competes with the Business of the Company; or c) provide any other services to or for the benefit of any person or entity that competes with the Business of the Company. Employees distribution is separate form this non-compete.

(Exhibit 2, Employment Agreement ¶ 9.)

35.     The Employment Agreement defines "Business" as meaning "the manufacture, sale, installation, and maintenance of insulation for residential and commercial use." (Exhibit 2, Employment Agreement ¶ 1(b).)

36.     The Employment Agreement defines "Territory" as meaning "a 150 mile radius of any [Cohen's] facility." (Exhibit 2, Employment Agreement ¶ 1(e).)

37.     Defendant expressly acknowledged that a breach of the non-competition agreement contained within the Employment Agreement "would cause immeasurable and irreparable harm to [Cohen's]," as set forth more fully below:

> 14. **Remedies for Breach**. Employee recognizes and agrees that a breach by Employee of any covenant contained in this Agreement would cause immeasurable and irreparable harm to the Company. In the event of a breach or threatened breach of any covenant contained herein, the Company shall be entitled to temporary and permanent injunctive relief, restraining Employee from violating or threatening to violate any covenant contained herein, as well as all costs and fees incurred by the Company, including attorneys' fees, as a result of Employee's breach or threatened breach of the covenant. The Company and Employee agree that the relief described herein is in addition to such other and further relief as may be available to the Company at equity or by law. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages from Employee.

(Exhibit 2, Employment Agreement ¶ 14.)

38.     Defendant also expressly acknowledged that the non-competition agreement contained within the Employment Agreement is "necessary for the legitimate business interests of [Cohen's] and impose a reasonable restraint on [Defendant] in light of the activities and business of [Cohen's] . . . ." (Exhibit 2, Employment Agreement ¶ 16.)

39.     From December 6, 2023 through January 24, 2025, Defendant was employed by Cohen's.

40.     Cohen's considers the goodwill it purchased via the Asset Purchase Agreement and its relationships with its customers and employees to be its most valuable assets, along with the confidential information and trade secrets that it has developed over the years.

41.     Cohen's entrusted Defendant with its customers and to be loyal to Cohen's.

42.     Indeed, Defendant expressly agreed to conduct all his activities "in strict loyalty to [Cohen's]." (Exhibit 2, Employment Agreement ¶ 3.)

43.     Based on Defendant's employment with Cohen's, as well as his aforementioned background, knowledge, and experience, he is a sophisticated party relative to the Employment Agreement and he acquired knowledge of the most important records of Cohen's, including financial statements, pricing, and trade secrets, as well as current and prospective client

information.

44. As evidenced by the salary and commission terms, the non-competition agreement contained within the Employment Agreement was supported by valid consideration.

### Breach of the Restrictive Covenants

45. In January 2025, prior to Plaintiff's knowledge of any breach by Defendant of the non-competition agreements, Defendant voluntarily terminated his employment with Cohen's.

46. Cohen's paid Defendant his employment salary at all pertinent times and complied with the salary obligations set forth in the Employment Agreement through January 24, 2025, the date of Defendant's voluntary termination of employment with Cohen's.

47. Upon information and belief, Defendant has engaged in the installing of insulation in residential and commercial properties since at least as early as January 1, 2025.

48. Defendant formed a new limited liability company called Insulate NC LLC on January 1, 2025. (Exhibit 3, North Carolina Secretary of State Business Registration Webpage.)

49. The principal office address for Insulate NC LLC is listed as ***the same address as Plaintiff's Asheville office location***, i.e. 12 Glenn Willow Drive, Arden, North Carolina 28704-0999.

50. Additionally, Cohen's has received notices from one or more actual customers and/or one or more prospective customers of Defendant, who was conducting insulation services and providing estimates for insulation services to said customers.

51. Based upon the aforementioned notices and upon information and belief, the insulation services performed and/or estimated by Defendant is in excess of seventy-five thousand dollars ($75,000.00).

52. Further, by conducting the aforementioned services out of the same office space as

9

Plaintiff's Asheville office location, Defendant stands to confuse customers and damage the goodwill purchased and cultivated by Cohen's for its ongoing business in Asheville, North Carolina.

53. Upon information and belief, Defendant engaged in the aforementioned work within one hundred and fifty miles and/or one hundred miles of Plaintiff's Asheville office location, in violation of both non-competition agreements contained within the Asset Purchase Agreement and the Employment Agreement.

54. On February 10, 2025, counsel for Cohen's served a cease and desist letter to Defendant to which Defendant failed to respond.

55. Upon information and belief, Defendant has and continues to violate the non-competition agreements contained within the Asset Purchase Agreement and the Employment Agreement.

**FOR A FIRST CAUSE OF ACTION**
**(Injunctive Relief Against Defendant)**

56. Cohen's realleges and reavers the foregoing as fully as if restated verbatim.

57. The Asset Purchase Agreement and the Employment Agreement are legally binding contracts between Cohen's and Defendant for which valid consideration was provided to Defendant.

58. Cohen's fulfilled all of its obligations under the Asset Purchase Agreement and the Employment Agreement and complied with all terms thereof.

59. Defendant agreed to abide by the terms of the Asset Purchase Agreement and the Employment Agreement, including the non-competition agreements contained therein.

60. The non-competition agreements contained within the Asset Purchase Agreement and the Employment Agreement are valid and enforceable.

61. Upon information and belief, Defendant intentionally, willfully, and materially breached and continues to breach the non-competition agreements contained within the Asset Purchase Agreement and the Employment Agreement by engaging in the installation of insulation and performing other such insulation services within one hundred miles and/or within one hundred and fifty miles of Plaintiff's Asheville office location.

62. As a direct and proximate result of Defendant's breach of the Asset Purchase Agreement and the Employment Agreement, Cohen's has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

63. The balance of hardships stands in favor of Cohen's as Defendant was adequately compensated for the sale of his two insulation businesses pursuant to the Asset Purchase Agreement and was timely and adequately compensated as an employee of Cohen's pursuant to the payment obligations of the Employment Agreement.

64. The public interest would not be disserved by injunctive relief.

65. Indeed, the public interest would be served by injunctive relief in order to protect consumers from confusion and misrepresentation from Defendant's acts and omissions.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays this Court award the following relief:

a) declaratory and injunctive relief;

b) Plaintiff's costs and expenses, including attorneys' fees, incurred in connection with bringing this action and to which Plaintiff is entitled by contract; and

c) such other and further relief as the Court deems just and proper.

                    Respectfully submitted,

                    /s/ Rhett D. Ricard
                    Rhett D. Ricard, Federal Bar No. 13549
                    MAYNARD NEXSEN PC
                    205 King Street, Suite 400 (29401)
                    P.O. Box 486
                    Charleston, SC  29402
                    PHONE:  843.577.9440
                    FACSIMILE:  843.720.1777
                    rricard@maynardnexsen.com

                    *Attorney for Plaintiff*

March 12, 2025
Charleston, South Carolina